UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **MARVIS STELLA MOORE,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:13-CV-00600-MHH |
| } | |
| **CAROLYN W. COLVIN, Acting** } | |
| **Commissioner, Social Security** } | |
| **Administration,** } | |
| } | |
| **Defendant.** } | |
| } | |

## MEMORANDUM OPINION

Plaintiff Marvis Stella Moore brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a final adverse decision of the Commissioner of Social Security, affirming the decision of the Administrative Law Judge ("ALJ") who denied Ms. Moore's Title II claim for a period of disability and disability insurance benefits and her Title XVI claim for supplemental security income. After careful review, the Court finds that substantial evidence supports the ALJ's decision. Therefore, the Court affirms the Commissioner's ruling.

## STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s]

the ALJ's 'factual findings with deference' and her 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND

On September 15, 2009, Ms. Moore filed an application for a period of disability and disability insurance benefits pursuant to Title II of the Social

Security Act, and also filed an application for supplemental security income pursuant to Title XVI. (TR 24, 172, 176).[1] In both applications, Ms. Moore alleged that her disability began on December 31, 2005. (TR 24, 172, 176). The Social Security Administration denied both claims on November 23, 2009. (TR 24, 98, 99). Ms. Moore then filed a written request for a hearing before an ALJ on December 21, 2009. (TR 24, 117).

The ALJ held a video hearing on July 20, 2011. (Doc. 12, p.1; TR 24, 42). Ms. Moore, accompanied by her attorney, appeared and testified from Gadsden, Alabama. (Doc. 12, p.1; TR 24). Norma-Jill Jacobson, an impartial vocational expert, also testified at the hearing. (TR 24, 63). At the time of her hearing, Ms. Moore was 47 years old, which is considered a "younger person" under 20 C.F.R. § 416.963(c). (TR 46). Ms. Moore has an eighth grade education.[2] (TR 44, 47). Her past relevant work experience is as a poultry worker, a fast food worker, a fast food assistant manager, and a packer. (TR 64-68).

---

[1] The ALJ's decision states that Ms. Moore filed both applications for Title II and Title XVI on September 1, 2009 (R. 24); however, both the Application Summary for Disability Insurance Benefits and the Application Summary for Supplemental Security Income from the Social Security Administration list the application filing date as September 15, 2009. (TR 172, 176). This discrepancy is immaterial to the Court's analysis.

[2] When she testified before the ALJ on July 20, 2011, Ms. Moore stated that she completed the eighth grade. (TR 46-47). Ms. Moore's Disability Report indicates that Ms. Moore completed the ninth grade. (TR 236). The discrepancy does not impact the Court's analysis.

On August 12, 2011, the ALJ issued a decision denying Ms. Moore's disability claims. (TR 24-35). The ALJ found that Ms. Moore has not engaged in substantial gainful activity since December 31, 2005, the alleged onset date. (TR 26). Next, the ALJ determined that "[Ms. Moore] has the following severe impairments: obesity, migraine headaches and major depression." (TR 26). Nevertheless, the ALJ found that Ms. Moore does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 27). Next, the ALJ concluded that Ms. Moore had the residual functional capacity ("RFC") to perform light work. (TR 26). Specifically, the ALJ found that:

> [Ms. Moore] can occasionally climb stairs or ramps, crouch and crawl; she can frequently balance, stoop, and kneel; and she should never be exposed to hazardous conditions such as heights and moving machinery. She can understand, remember and carry out simple instructions but not detailed and complex instructions. Work place changes should be infrequent and introduced gradually. She can perform work that needs little or no judgment and make simple, work-related decisions. She can never interact with the public and occasionally interact with co-workers and supervisors meaning she can be around employees throughout the workday with occasional conversation and interpersonal interaction; but overall, she is better dealing with things rather than people. She is able to sustain concentration and attention for 2 hours at one time with normal break throughout an 8-hour workday.

(TR 28). The ALJ concluded that Ms. Moore can perform her past relevant work as a packer because the activities needed to complete her work in such a position are not precluded by her RFC. (TR 33). The ALJ also determined that there were

other similar jobs in the nation and in Alabama that Ms. Moore could perform despite her limitations, including laundry bagger, food inspector, and assembler. (TR 34). Consequently, the ALJ concluded that Ms. Moore is not disabled as that term is defined in the Social Security Act. (TR 35).

On August 12, 2011, this became the final decision of the Commissioner when the Appeals Council refused to review the ALJ's decision. (Doc. 12, p. 3; TR 1). Having exhausted all administrative remedies, Ms. Moore filed this action for judicial review pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

## **ANALYSIS**

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013). "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and

medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Ms. Moore argues that she is entitled to relief from the ALJ's decision because the ALJ failed to assign proper weight to the opinions of Dr. Richard E. Grant and Dr. Pascual Herrera, Ms. Moore's treating physicians. (Doc. 12, p. 4-15). The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*; *see also Crawford*, 363 F.3d at 1159. "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error . . . . 'Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.'" *Gaskin*, 533 Fed.

6

Appx. at 931 (citing *Lewis,* 125 F.3d at 1440, and quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011)).

Dr. Grant, Ms. Moore's treating psychiatrist, completed a mental source statement on April 15, 2011, in which he opined that Ms. Moore had a "marked" or "extreme" limitation in 16 of the 17 areas listed on the form. (TR 349-351). Dr. Grant commented that Ms. Moore "experiences audio and visual hallucianations. She has difficulty expressing herself and answers questions with 'I don't know' often. She is also slow to answer questions. Limited insight." (TR 351). The ALJ stated that she afforded little weight to Dr. Grant's opinion because Dr. Grant's report is inconsistent with both the medical record as a whole and Ms. Moore's statements regarding her abilities. (TR 32). First, despite claiming disabling depression, Ms. Moore did not seek formal mental health treatment until February 2010, five months after she initially filed applications for benefits and nearly five years after the alleged disability onset date. (TR 24, 31, 172, 176).[3] Second, when she did receive formal treatment, her mental health treatment notes indicate a Global Assessment of Function (GAF) score of 55 or 56.[4] (TR 353-361). A GAF score of 55/56 indicates moderate symptoms, not "marked" or "extreme"

---

[3] On page 31 of the ALJ's decision, the ALJ states that Ms. Moore applied for disability benefits in September 2010. The Court construes this as a scrivener's error. The record establishes that Ms. Moore applied for benefits in September 2009. (TR 172, 176).

[4] The GAF score was reported on six separate occasions from February 2010 to April 2011.

symptoms. (American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, p. 34 (Text Rev., 4th ed. 2000) (DSM-IV); TR 349-351).

Ms. Moore argues that the ALJ's reliance on the GAF scores to discredit Dr. Grant is misplaced:

> …neither Social Security regulations nor case law require an ALJ to determine the extent of an individual's mental impairment based solely on a GAF score. In fact, the Commissioner has declined to endorse the GAF scale "for use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings."

(Doc. 12, p. 9) (quoting *Camp v. Barnhart,* 103 Fed. Appx. 352, 354 (10th Cir. 2004)). That may be so; however, the ALJ did not rely solely upon the GAF score in discounting Dr. Grant's opinion. As discussed above, the ALJ also based her opinion on Ms. Moore's lack of formal treatment in the years after she alleged her depression became disabling. Additionally, the ALJ considered Ms. Moore's testimony regarding her abilities and activities of daily living and Ms. Moore's noncompliance with medication and therapy. (TR 31, 32).

The ALJ noted that Dr. Grant's opinion is inconsistent with Ms. Moore's Function Report and her testimony during the hearing regarding her daily activities. (TR 29, 32). Ms. Moore has stated that she has no trouble paying attention as long as she does not have a headache; she can follow written instructions "as closely as she can" given some limited reading ability; she can

follow spoken instructions "most of the time"; she has no problem following authority; and, she has never been fired for failing to get along with other people. (TR 228-229). The ALJ noted that Dr. Grant's conclusion that Ms. Moore had "marked" or "extreme" limitations in these areas is inconsistent with her statements that she had no such problems. (TR 32). Moreover, Ms. Moore's Function Report indicates that she cleans the house, washes clothes, cooks, attends church, exercises, cares for her personal needs, and spends time with her relatives. (TR 32, 223, 227). The ALJ found these activities conflicted with Dr. Grant's assessment. (TR 32).

Ms. Moore criticizes the ALJ's reliance on her Function Report, which Ms. Moore completed on September 19, 2009, more than a year and a half before Dr. Grant assessed Ms. Moore's psychological impairments. Ms. Moore points to no legal authority for the proposition that the completion date of the Function Report impacts its reliability or the ALJ's ability to use it. (Doc.12 p. 10). Moreover, because Ms. Moore alleges that her disability began in December 2005, the ALJ properly considered Ms. Moore's statements in 2009 about the impact of her depression on her activities of daily living. *See e.g.*, *Pinion v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 580, 583 (11th Cir. 2013) (affirming ALJ's decision to reject treating physician's disability opinion where claimant's reported activities were inconsistent with treating physician's disability opinion).

Finally, the ALJ noted that Dr. Grant's treatment records show, and Ms. Moore's testimony confirms, that she has auditory and visual hallucinations. Dr. Grant prescribed medicine to treat Ms. Moore; however, Dr. Grant's records demonstrate that Ms. Moore refused to take her medications for several months. (TR 53, 355). The ALJ properly considered Ms. Moore's failure to comply with her treatment plan as evidence that her psychological impairments were not as "marked" or "severe" as Dr. Grant opined. *See Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence, it is proper for ALJ to consider failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing). Accordingly, the ALJ properly rejected Dr. Grant's opinion.

The same analysis applies to Dr. Herrera's opinion. The ALJ articulated good cause for assigning little weight to Dr. Herrera's opinion. The ALJ reviewed Dr. Herrera's April 13, 2011 physical capacities evaluation, in which Dr. Herrera opined that Ms. Moore is able to sit only for one hour during an eight hour day and that she is able to stand or walk for only one hour out of an eight hour day. (TR 311). Furthermore, the evaluation states that Ms. Moore: (1) can never bend, stoop, or work with or around hazardous machinery; (2) can rarely push, pull, climb stairs or ladders, reach, operate motor vehicles or work around

environmental pollutants; and (3) is likely to be absent from work more than four days per month. (TR 311).

Ms. Moore contends that because the findings within the PCE are consistent with Dr. Herrera's treatment notes and because Dr. Herrera was her treating physician whom she saw on more than 16 different occasions, the ALJ failed to properly weigh his opinion. (Doc. 12, p. 12-13). The ALJ, however, noted that Dr. Herrera consistently found Ms. Moore's neurological and extremity examinations within normal limits. (TR 316, 318, 320, 322-324, 326, 328, 330, 332, 335-337, 344-347). Dr. Herrera also reported that Ms. Moore has "several serious chronic medical problems everything from arthritis to back pain to met[abolic] syndrome to psychosis." (TR 311). As the ALJ noted, there is no evidence of arthritis or metabolic syndrome in Dr. Herrera's treatment notes to substantiate his report. Ms. Moore's lab evaluations are normal; the results show no signs of metabolic problems. (TR 316, 318, 320, 322-324, 326, 328, 330, 332, 335-337, 344-347). Because Dr. Herrera's opinion is inconsistent with his treatment notes, the ALJ had good cause to afford little weight to Dr. Herrera's opinion. *See e.g.*, *Crawford*, 363 F.3d at 1159.

Furthermore, Ms. Moore's Function Report states that she attends church, tries to exercise, washes clothes, prepares sandwiches and frozen dinners daily for meals, and does some light cleaning around the house. (TR 32, 223-227).

Additionally, while Ms. Moore testified that she is able to stand only for approximately 30 minutes, walk for approximately 30 minutes, and sit for approximately 30 minutes in a day (TR 51), and she testified that she spends most of the day in a recliner (TR 57). Consequently, the ALJ determined that Dr. Herrera's assessment conflicts with Ms. Moore's own testimony regarding her daily activity.[5] The ALJ properly found that the extreme limitations that Ms. Moore testified to and that Dr. Herrera reported were inconsistent with the information that Ms. Moore reported in her Function Report regarding her daily activities. (TR 32). *See e.g.*, *Pinion* 522 Fed. Appx. at 583.

Having examined the available evidence thoroughly, the ALJ determined that Ms. Moore is not disabled. That finding rests on substantial evidence. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.

## **CONCLUSION**

Consistent with the foregoing, the Court concludes that the ALJ's decision is based upon substantial evidence and is consistent with applicable legal standards. Accordingly, the Court AFFIRMS the Commissioner's decision. The Court will enter a final judgment consistent with this opinion.

---

[5] Ms. Moore argues that the ALJ improperly failed to determine whether the recliner was in "an upright-sitting or reclining position." (Doc. 12, p. 14). The argument improperly attempts to shift the burden in this proceeding. It is the plaintiff's burden to provide evidence of a disability within the meaning of the Social Security Act. (42 U.S.C. §423(d)(5)(A)).

**DONE** and **ORDERED** this September 18, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE